```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
STARR INDEMNITY & LIABILITY COMPANY,                              :
                                                                  :
                              Plaintiff,                          :
                                                                  :
             -v-                                                  :
                                                                  :
EXIST, INC.,                                                      :
                                                                  :
                              Defendant.                          :
                                                                  :
------------------------------------------------------------------X
```


USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_06/14/2023__

23-cv-786 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

Defendant Exist, Inc. ("Defendant" or "Exist") moves to dismiss the complaint against it for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6) and on grounds of forum non conveniens. Dkt. No. 16. In the alternative, Defendant moves for a more definite statement and for a severance pursuant to Federal Rule of Civil Procedure 21. *Id.*

For the following reasons, the motion to dismiss is granted.

## BACKGROUND

For purposes of this motion, the Court accepts as true the well-pleaded facts in the amended complaint as supplemented by the documents incorporated by reference.

## I.      The Insurance Policy

Exist is a nationwide wholesaler of men's and women's apparel and offers and sells its line of clothing to large retailers throughout the United States, such as Walmart. Dkt. No. 8 ¶ 12. Exist is incorporated in the State of Florida and has its principal place of business in Florida. *Id.* ¶ 3.

Plaintiff Starr Indemnity & Liability Company ("Plaintiff" or "Starr") is an insurance company organized and existing under and by virtue of the laws of the State of Texas with a principal place of business in New York. *Id.* ¶ 1.

Exist is the insured under the terms and conditions, including endorsements, of Marine Cargo Policy No. MASICAT28US21 (the "Policy"), issued by Starr. *Id.* ¶ 19. The effective period of the Policy is continuous until cancelled and coverage first attached under the Policy on or after May 19, 2021. *Id.*

Exist has coverage under the Warehouse/Processing Endorsement to the Policy which provides: "The stores or warehouses to which the Assured (sic) hereby extend[s] approval . . . are as follows: . . . 1919 NW 19 St #101&#102, Ft. Lauderdale, FL." *Id.* ¶ 21. The Policy also contains a "Pairs and Sets" clause which states in relevant part:

> **48.  PAIR AND SETS:**
>
> It is understood and agreed that the loss of or damage to any one item of the goods and/or merchandise and/or property insured under this policy which consist of items in a pair or set, shall constitute a total loss of such pair or set.

The Sue and Labor Clause of the Policy provides in pertinent part as follows:

> **39.  SUE & LABOR CLAUSE:**
>
> In the case of any imminent or actual loss or misfortune, it shall be lawful and necessary to and for The Assured, its factors, servants and assigns, to sue, labor and travel for, in and about the defense, safeguard and recovery of the goods and/or merchandise and/or property insured hereunder, or any part thereof, without prejudice to this insurance.

*Id.* ¶¶ 22–23.

## II.     The Theft Claim

This case arises from two sets of claims made by Exist under the Policy. The first set of claims is referred to as the "Theft Claim" or the "November 2021 Claim." On or about January 12, 2022, Exist gave "First Notice" to Starr of loss, seeking coverage under the Policy for the

loss of goods stolen from trailers in the outside yard of Exist's warehouse in Fort Lauderdale,
Florida in the early morning of November 22, 2021.  *Id.* ¶¶ 26, 35–36.  The two trailers
contained wearing apparel that was purchased from companies in Pakistan.  The apparel was
carried aboard the MSC ISHYKA, trans-shipped to the MSC SOFIA PAZ, carried from the Far
East to Miami, Florida, and then finally delivered by truck and accepted by Exist at the outside
yard located at Exist's warehouse at 1919 NW 19th Street, Fort Lauderdale, Florida.  *Id.* ¶ 32.
On or about March 11, 2022, portions of the stolen goods were located and taken into custody by
local law enforcement.  *Id.* ¶ 37.  Thereafter, the recovered goods were offered to Exist.  *Id.* ¶ 38.
On or about May 2, 2022, after a long delay, Exist rejected the return of the recovered goods.  *Id.*
¶ 39.  Upon inspection of the recovered goods, no damage was found to the recovered goods,
which remained packaged in cartons and internally protected by individual plastic wraps—no
wetting, staining, or soiling was observed.  *Id.* ¶ 41.

### III.     The Water Damage Claim

The second set of claims is referred to as the "Water Damage Claim" or the "July 2021
Claim."  On or about July 21, 2021, Exist provided notice of loss to Starr with respect to 610
boxes of clothing shipped to Exist in Florida from The Cotton Classic Apparelss in India.  *Id*. ¶¶
43–44, 49.  The various boxes comprising the shipment were transferred through a United Parcel
Service ("UPS") facility in Koeln, Germany, at various times between July 13, 2021 and July 15,
2021, and arrived at Exist's facility in Florida at various times between July 16, 2021 and July
21, 2021.  *Id.* ¶¶ 45–46.  Exist states that it did not accept delivery of the boxes, in whole or in
part, from UPS, because the boxes showed water damage, and the boxes, in whole or in part,
were reportedly returned to UPS.  *Id.* ¶ 47.  It has been reported that there was flooding in Koeln,
Germany, caused by heavy rain between July 14, 2021 and July 15, 2021.  *Id.* ¶ 49.

IV.     **Starr's Processing of the Claims**

Although Exist first gave notice of its Theft Claim to Starr on or about January 12, 2022,

*id*. ¶ 36, Exist waited for over a year to hear whether its claim had been granted or denied.  On

January 30, 2023, an attorney for Exist first contacted Starr, stating "I have been retained by

Exist, Inc. to represent them on the above referenced claims" and asking to speak.  Dkt. No. 16-

1.[1]  Exactly one day later, on January 31, 2023, Starr filed the original complaint in this action

denying the Theft Claim.  Dkt. No. 1; Dkt. No. 8 ¶ 42.  Prior to Starr filing the instant action on

January 31, 2023, Exist had not been informed that its Theft Claim was denied.

In its complaint, Starr maintained that the warehouse coverage under the

Warehouse/Processing Endorsement is limited by its express terms to goods stored in the

warehouse and does not extend to goods, such as the stolen goods, that were stored outside of the

warehouse.  Dkt. No. 1 ¶ 28.  It also alleged that Exist made the decision for its own reasons to

store the delivered shipments in the trailers in the yard and to delay the unloading of the trailers

and movement of the goods into the warehouse to a later time.  *Id.* ¶ 34.  Starr also denied Exist's

claim under the Pairs and Sets clause.  *Id.* ¶ 29.  It claimed that the undamaged goods in the

warehouse, which were not shipped with the goods that were stolen but were received and

accepted into inventory by Exist prior to the theft of the subject trailers, were not covered by the

Pairs and Sets Clause.  *Id.* ¶¶ 29–31.

On March 21, 2023, Starr filed an amended complaint in which it also first denied the

Water Damage Claim to the extent that it sought coverage under the Pairs and Sets Clause for

---

[1] Neither the original complaint nor amended complaint in this action discusses this email.
Instead, evidence of this email was submitted in connection with Exist's motion to dismiss.  Dkt.
No. 16-1.  Exist also submits evidence in connection with that motion that, despite the fact that
Starr had filed the instant lawsuit on January 31, 2023 denying the Theft Claim, a representative
of Starr responded on February 1, 2023 to Exist's attorney stating "we are revie[w]ing the file
with Starr."  Dkt. No. 16-2.

any goods insured and received as separate shipments and/or to the extent Exist breached its obligations under the Sue and Labor Clause and at law.  Dkt. No. 8 ¶ 64.[2]

In that amended complaint, Starr alleges, among other things, that UPS conducted a unilateral survey of the goods on or before October 15, 2021 and found 135 damaged boxes, and that on or about October 20, 2021, Exist reportedly requested that UPS allow Exist to inspect the goods and UPS reportedly would not allow Exist to do so.  *Id.* ¶¶ 55–56.  It alleges that, after the goods were transferred from UPS to a third-party facility sometime on or before February 1, 2022, the goods were inspected by Sedgwick on behalf of Starr on February 1, 2022, and Sedgwick found that most of the boxes had clothing that was completely dry because the water damage had occurred more than six months prior, which made water damage difficult to verify visually.  *Id.* ¶¶ 57–58, 60.  Sedgwick could not determine, among other things, which boxes UPS had determined to be damaged during its unilateral survey.  *Id.* ¶ 59.  Starr further alleges that Exist has made a claim under the Pairs and Sets Clause to recover for the value of certain goods that were not damaged and that were not part of the subject shipment from India to Florida in July 2021.  *Id.* ¶ 62.

## PROCEDURAL HISTORY

Plaintiff filed its complaint on January 31, 2023.  Dkt. No. 1.  The complaint sought a declaratory judgment that there was no coverage under the Policy for the claimed loss of the wearing apparel that constitutes the Theft Claim and, in the alternative, that there is no coverage for the loss of apparel under the Pairs and Sets Clause.  *Id.* at ECF p. 10.  It also sought a declaratory judgment, in the alternative, that there is no coverage under the Policy for the Theft

---

[2] The Amended Complaint also states that Starr denies coverage because Exist did not have an insurable interest in the goods during the period of coverage, Dkt. No. 8 ¶ 64, but it admits that it is not pursuing that claim.

Claim because of Exist's breach of the Sue and Labor Clause and failure to mitigate and for its breach of the Notice of Claim Clause.  *Id.*  There was no mention of the Water Damage Claim.

Plaintiff filed its amended complaint on March 21, 2023.  Dkt. No. 8.  Plaintiff seeks the following declarations in its favor (1) that there is no coverage under the Policy for the Theft Claim, (2) there is no coverage under the Policy for the Theft Claim due to Defendant's breach of the Sue and Labor Clause and its failure to mitigate damages, (3) there is no coverage under the Policy for the Theft Claim due to Defendant's breach of the Notice of Loss Clause, (4) there is no coverage under the Policy for the Water Damage Claim, (5) there is no coverage under the Policy for the Water Damage Claim due to Defendant's breach of the Sue and Labor Clause and failure to mitigate the loss, and (6) there is no coverage under the Policy for the Water Damage Clause under the Pairs and Sets Clause.  *Id.* at 15–16.

On April 25, 2023, Defendant filed the instant motion to dismiss the amended complaint. Dkt. No. 16.  Plaintiff filed a memorandum of law in opposition to the motion on May 16, 2023 along with supporting declarations, Dkt. Nos. 20–22, and Defendant filed a reply memorandum of law in further support of the motion on May 23, 2023, Dkt. No. 24.

## DISCUSSION

Defendant argues that the amended complaint should be dismissed for a number of reasons: (1) forum shopping because Plaintiff filed the complaint as soon as it learned that Defendant had hired an attorney despite the fact that it had Defendant's claims for over a year; (2) forum non conveniens because Defendant resides in Florida, one of the losses happened in Florida, both of the losses were discovered in Florida, and most of Defendant's discovery is in Florida; and (3) failure to state a claim for relief because Defendant merely seeks to confirm that its denials of coverage were proper.  Dkt. No. 16.  Defendant also demands a more definite

statement under Federal Rule of Civil Procedure 12(e), and argues that the Theft Claim should be severed from the Water Damage claim. *Id.*

The Court starts with the question whether Plaintiff has stated a claim for relief. Finding it has not, the Court dismisses the case.

## I.      Request for Declaratory Relief

In moving to dismiss, Defendant argues that Plaintiff's complaint under the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, is improper because it seeks merely to confirm that its denials were proper and does not seek any prospective relief. Dkt. No. 16 at 4. Defendant argues that Plaintiff's claims are "in the form of an affirmative defense to a breach of contract action" and therefore not suitable for declaratory judgment. Dkt. No. 16 at 12.

The DJA provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "The Act 'confers a discretion on the courts rather than an absolute right upon the litigant.'" *MSR Tr. v. Nationstar Mortg. LLC*, 2022 WL 3441613, at *12 (S.D.N.Y. July 28, 2022), *report and recommendation adopted*, 2022 WL 17689839 (S.D.N.Y. Dec. 15, 2022) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995)); *see also AmSouth Bank v. Dale*, 386 F.3d 763, 784 (6th Cir. 2004) ("[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." (citation omitted)). "In determining whether a declaratory judgment action is warranted, a court considers the totality of circumstances, including whether declaratory judgment (1) will 'serve a useful purpose in clarifying and settling the legal relations in issue;' or (2) 'afford relief from the uncertainty,

insecurity, and controversy giving rise to the proceeding.'"  *Nationstar Mortg. LLC*, 2022 WL

3441613, at *12 (citation omitted).

"The fundamental purpose of the DJA is to 'avoid accrual of avoidable damages to one

not certain of his rights and to afford him an early adjudication without waiting until his

adversary should see fit to begin suit, after damage has accrued.'"  *Nat'l Union Fire Ins. Co. of*

*Pittsburgh, PA. v. Int'l Wire Grp., Inc.*, 2003 WL 21277114, at *4 (S.D.N.Y. June 2, 2003)

(quoting *Luckenbach Steamship Co. v. United States*, 312 F.2d 545, 548 (2d Cir. 1963)); *see In*

*re Combustion Equip. Assocs., Inc.*, 838 F.2d 35, 37 (2d Cir. 1988) ("The purpose of the Act is to

enable parties to adjudicate disputes before either side suffers great damage.").  "[T]he

declaratory judgment procedure 'creates a means by which rights and obligations may be

adjudicated in cases involving an actual controversy that has not reached the stage at which

either party may seek a coercive remedy, or in which the party entitled to such a remedy fails to

sue for it.'"  *United States v. Doherty*, 786 F.2d 491, 498–99 (2d Cir. 1986) (quoting Wright, *The*

*Law of Federal Courts* § 100, at 671 (4th ed. 1983)).  In essence, it permits a party whose

contemplated exercise "of what he claims to be his rights" could give rise to damages and a

lawsuit, to obtain a declaration of his rights before damages have accrued and thereby either to

"remove the cloud by an authoritative determination of the plaintiff's legal right, privilege and

immunity and the defendant's absence of right, and disability," or to alter his conduct going

forward.  *Id.* (quoting Borchard, *Declaratory Judgments* 280 (2d ed. 1941)).

Accordingly, anticipatory judgments of non-liability are appropriate under the DJA

where they would adjudicate "claims asserting unaccrued or undefined rights or obligations

arising under contractual relations such as insurance and intellectual property."  *Dow Jones &*

*Co. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 426 (S.D.N.Y. 2002), *aff'd*, 346 F.3d 357 (2d Cir.

2003).  In that circumstance, the declaratory judgment plaintiff faced with a threat regarding the

exercise of his rights in the future can obtain an opinion as to the lawfulness of his ways without

first engaging in the conduct that his adversary claims violates its rights.  *See* 16A Couch on Ins.

§ 232:46 (3d ed. 2023) ("Declaratory relief operates prospectively, serving to set controversies at

rest before obligations are repudiated, rights are invaded, or wrongs are committed.").  On the

other hand, "where the purported use of the DJA seeks a declaration of non-liability to

preemptively defeat actions grounded on tort claims involving rights already accrued by reason

of alleged wrongful conduct, various courts have held that that application is not a warranted

purpose of the DJA." *Harrods, Ltd.*, 237 F. Supp. 2d at 426.  In that instance, a declaratory

judgment serves no forward-looking purpose.  It is simply a mechanism to avoid the more

natural plaintiff's choice of forum.

  For these reasons, claims arising under insurance contracts where all the damages have

not yet accrued are often an appropriate subject of declaratory judgment actions.  Where the

insurer's obligation (if there be one) is ongoing and where the full value of a claim has not yet

accrued, a declaratory judgment pursues a useful forward-looking function.  Both the insured and

the insurer can adjust conduct going forward to limit or eliminate any future damages.  It is also

common for the court to entertain a declaratory judgment action where the insurer disputes the

duty to defend and indemnify its insured.  14A Couch on Ins. § 202:3 ("In case of doubt or a

dispute as to whether there is a duty to defend, based on a dispute over whether an insurance

policy affords coverage for the conduct alleged in the complaint against the insured, a

declaratory judgment action or motion may be brought to make the determination.").  In those

cases,

> [i]t frequently will be useful to have a declaration whether an accident is covered
> by a policy and whether the insurer is thus obligated to defend a tort action against

9

> its insured.  The issues of coverage commonly cannot be litigated in the tort action
> and thus two suits will be necessary in any event.  Unless the insured is willing to
> allow the insurer to defend under a reservation of rights, the insurer, in most states,
> either must surrender its contractual right and duty to defend the insured or must
> abandon its policy defenses.

Wright & Miller, 10B Fed. Prac. & Proc. Civ. § 2760 (4th ed. 2023).  Thus, for example, in

*Allstate Insurance Company v. Essiam*, 2015 WL 3796243 (D. Conn. June 17, 2015), the court

declined to dismiss a declaratory relief claim concerning an insurer's duty to defend and

indemnify defendants under their insurance policy for claims related to a car accident.  *Id*. at *1.

The court noted that a "declaratory judgment determining whether Allstate is required to defend

or indemnify [defendants] in the state court actions surely clarifies and settles this specific legal

issue and provides . . . relief from uncertainty."  *Id.* at *2.  The court explained:  "Judicial

resolution of that threshold issue at that early stage is highly useful and beneficial to all interests

concerned, including the third party who sues on an injury claim against the insured, previously

threatened or not, and wonders if funds will be available to satisfy a judgment if obtained."  *Id.*

(quoting *Sikorsky Aircraft Corp. v. Lloyds TSB Gen. Leasing (No. 20) Ltd.*, 774 F. Supp. 2d 431,

448–49 (D. Conn. 2011)).

On the other hand, where the declaratory judgment action seeks solely to determine

whether the insurer is liable for losses already accrued and there is no threat of future damages,

the action ceases to have a forward-looking function impacting intended future conduct.  In

*National Union Fire Insurance Co. of Pittsburgh, PA.*, 2003 WL 21277114, for example, the

court dismissed an insurer's claim against an insured, seeking a declaration of non-liability for

allegedly refusing to indemnify the insured for product liability suits caused by exploding

washing machines.  *See id*. at *1, 4–5.  The court noted that the insurer "does not seek a

prospective determination of its rights and responsibilities under the insurance contract (so that it

can avoid future damages), but rather a finding that it is not liable for damages alleged to have

already accrued." *Id.* at *5.  As a result, the claim was inappropriate for declaratory relief as "the instant suit is not necessary to clarify and settle the legal relations of the parties or to afford relief from uncertainty." *Id.*

This case is analogous to *National Union Fire Insurance Co. of Pittsburgh, PA.* and not to *Essiam* and, for similar reasons, the Court concludes that dismissal of the case is warranted. Resolution of this dispute would not "serve a useful purpose in clarifying and settling the legal relations in issue" or "afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Nationstar Mortg. LLC*, 2022 WL 3441613, at *12 (citation omitted).  The declaratory relief that Plaintiff seeks is a declaration that Plaintiff is not liable on already accrued claims, specifically the Theft Claim and the Water Damage Claim.  In other words, Plaintiff solely seeks a judgment that it does not have to pay Plaintiff out for its already accrued losses related to these claims.  Such relief serves no purpose other than as a method for Plaintiff to preempt Defendant—the natural plaintiff who could sue for damages on a breach of contract theory—from filing their own suit and choosing the forum.  *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, 2003 WL 21277114, at *6 ("Courts in the Second Circuit have repeatedly refused to exercise jurisdiction over declaratory actions motivated by a desire to wrest the choice of forum from the real plaintiff."); *see also Perez v. Ledesma*, 401 U.S. 82, 119 n.12 (1971) (Brennan, J., concurring in part and dissenting in part) ("The federal declaratory judgment is not a prize to the winner of a race to the courthouses.").

In fact, to allow the instant case for declaratory judgment to proceed would, in effect, allow the insurer to pick the forum for litigation, not the insured, in the vast majority of cases.  If an insurer may deny coverage through the initiation of a lawsuit, as Plaintiff did here, and if the injurer also is able to bring a declaratory action on a claim that it is not liable for already accrued

claims, then the insurer will be able to beat the insured to the courthouse in every case and

invoke the general presumption in favor of the first-filed action. *See Emps. Ins. of Wausau v.*

*Fox Ent. Grp., Inc.*, 522 F.3d 271, 274–75 (2d Cir. 2008) ("As a general rule, '[w]here there are

two competing lawsuits, the first suit should have priority.'" (quoting *First City Nat'l Bank &*

*Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989))).  The effect would be that any insurer in

breach could deprive its counterparty of the prerogative to choose whether, when, and where to

sue.  The result ineluctably would be an unseemly race to the courthouse.

Plaintiff is also not forced to incur any "additional harm" by waiting for Defendant to

initiate suit.  *See AmSouth Bank*, 386 F.3d at 786 ("[T]he threat of suit, however immediate, is

not by itself sufficient for the invocation of the federal power to issue a declaratory judgment."

(citation omitted)).  Even if Defendant were to wait years to initiate suit, Plaintiff will be in no

different position than it is today.  It will either have to pay out the money for the two claims to

Defendant or it will not have to.  Plaintiff does not allege that it would incur any further potential

costs in the interim.  This case is therefore distinct from, for example, a case involving a party

who wants to "embark on a marketing campaign" but who has "been threatened with suit over

trademark infringement."  *Id.*  In that case, a declaratory judgment action serves a useful purpose

as it allows the party to "go to court under the Declaratory Judgment Act and seek a judgment

that it is not infringing that trademark, thereby allowing it to proceed without the fear of

incurring further loss."  *Id.*  Here, however, Plaintiff seeks an adjudication that its past exercise

of what it believes are its rights—not to pay on the claims—has given rise to no legal

consequences.  Thus, "this suit is not necessary to clarify and settle the legal relations or afford

relief from uncertainty, insecurity and controversy" going forward.  *Gianni Sport Ltd. v.*

*Metallica*, 2000 WL 1773511, at *5 (S.D.N.Y. Dec. 4, 2000); *see Stoncor Grp., Inc. v. Peerless*

*Ins. Co.*, 2021 WL 2215558, at \*4 (S.D.N.Y. June 2, 2021) ("[A]ny damages that are due have

already accrued, and that the suit is not necessary to clarify and settle the legal relations or afford

relief from uncertainty, insecurity and controversy because of another pending action in a

different court." (cleaned up)).

It is true that the Court's judgment may offer some theoretical benefit beyond just

resolving the instant, already-accrued claim between the parties.  For example, this Court could

find that Plaintiff is not liable under the Policy for the Theft Claim because the language of the

Policy does not cover property outside of the warehouse.  Such a judgment could possibly serve

a useful purpose for Defendant prospectively.  Defendant might stop placing property outside of

its warehouse to ensure that it does not incur additional liability in the future.  But the DJA does

not exist to give parties an advisory opinion.  *See California v. Texas*, 141 S. Ct. 2104, 2115

(2021) ("[Just] like suits for every other type of remedy, declaratory-judgment actions must

satisfy Article III's case-or-controversy requirement." (citation omitted)); 16A Couch on Ins. §

232:46 ("The court may determine only the issues presented in the action and is not authorized

under the act to give an advisory opinion as to rights and liabilities hypothetically presented.").

"[T]he critical 'question . . . is whether . . . there is a substantial controversy, between parties

having adverse legal interests, of *sufficient immediacy and reality* to warrant the issuance of a

declaratory judgment.'"  *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 92 (2d

Cir. 2023) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)) (emphasis

added).  And, in the instant case, there is no evidence that Defendant has declared an intent to

place goods outside its warehouse in the future—much less in the *immediate* future—or that

Plaintiff has disputed such a prospective claim.  Thus, although the issuance of an advisory

opinion might alter Defendant's conduct in the future, there is not a dispute of immediacy and

reality to justify issuance of a declaratory judgment on this basis alone. *See Texas*, 141 S. Ct. at

2115–16 (for declaratory relief to be proper, "dispute must be real and substantial and admit of

specific relief through a decree of a conclusive character, as distinguished from an opinion

advising what the law would be upon a hypothetical state of facts." (cleaned up)). Nearly all

insurance cases concerning coverage (and, perhaps, all contract cases) have the implicit effect of

giving meaning to the terms of the parties' contract, which in turn can have the effect of guiding

the conduct of the parties going forward as well as that of third parties. But that the declaratory

judgment may provide some theoretical prospective benefit in guiding conduct or future

negotiations cannot alone provide the basis for a court to issue a declaratory judgment without

expanding the scope of the DJA far beyond where Article III will permit it to be taken.

Moreover, even if Defendant's theoretical need for such relief was sufficient, Plaintiff,

the party who actually brought the instant lawsuit, does not have such a need. The purpose of

this lawsuit for Defendant is plainly not to "seek a prospective determination of its rights and

responsibilities under the insurance contract (so that it can avoid future damages), but rather a

finding that it is not liable for damages alleged to have already accrued." *Nat'l Union Fire Ins.*

*Co. of Pittsburgh, PA.*, 2003 WL 21277114, at *5.

In sum, "the declaratory judgment that [Plaintiff] seeks is based entirely on [] past acts,

and [Plaintiff] fails to articulate the need for prospective relief." *Mariah Re Ltd. v. Am. Fam.*

*Mut. Ins. Co.*, 52 F. Supp. 3d 601, 623 (S.D.N.Y. 2014) (Sullivan, J.), *aff'd sub nom. Maria Re*

*Ltd. ex rel. Varga v. Am. Fam. Mut. Ins. Co.*, 607 F. App'x 123 (2d Cir. 2015). Plaintiff

essentially seeks to use the present declaratory relief action to assert affirmative defenses.

"'[T]he anticipation of defenses is not ordinarily a proper use of the declaratory judgment

procedure,' as '[i]t deprives the plaintiff of his traditional choice of forum and timing, and it

14

provokes a disorderly race to the courthouse.'" *Adirondack Cookie Co. Inc. v. Monaco Baking Co.*, 871 F. Supp. 2d 86, 94 (N.D.N.Y. 2012) (quoting *Hanes Corp. v. Millard*, 531 F.2d 585, 592–93 (D.C. Cir. 1976)).  Once Defendant files suit, Plaintiff may reassert these defenses in that lawsuit.[3]

The Second Circuit's decision in *Employers Insurance of Wausau ("Wausau")*, 522 F.3d 271, does not change the Court's conclusion.  That case involved a liability insurance policy. The court held that an insurer's action for declaratory judgment—which was filed prior to the insured's action—was entitled to priority against the insured's lawsuit under the first-filed rule. *Id.* at 274–78.  The court noted that "[a]s a general rule, '[w]here there are two competing lawsuits, the first suit should have priority,'" absent certain exceptions. *Id.* at 274–75 (quoting *First Simmons*, 878 F.2d at 79).  *Wausau* is distinguishable from the present case.  That case concerned whether a declaratory judgment action should have priority under the first-filed rule over a subsequently filed state court action, not whether the district court should have exercised its discretion to hear the declaratory judgment action in the first place.  And, the principles motivating dismissal of the instant declaratory judgment action would not have motivated dismissal of the federal action for declaratory relief in that case.  *Wausau* concerned a request for a declaratory judgment that the insurers were not obligated under a series of policies to provide

---

[3] That Defendant has not yet filed that lawsuit does not change this Court's opinion.  Although it is true that the fact that a lawsuit has been filed that will "necessarily settle the issues for which declaratory judgment is sought suggests that the declaratory judgment will serve 'no useful purpose,'" *Fleisher v. Phoenix Life Ins. Co.*, 858 F. Supp. 2d 290, 302 (S.D.N.Y. 2012) (quoting *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 301, 311 (S.D.N.Y. 2010)), here, Defendant has represented repeatedly that it intends to file such a lawsuit and this Court has no reason to doubt that representation.  In addition, even if Defendant did not file such a lawsuit, then the instant suit would still not serve any useful purpose.  Defendant would get all of the relief under the Policy that it requests—*i.e.*, it would not be required to pay out for either the Theft Claim or the Water Damage Claim.

coverage for a copyright-infringement lawsuit against the policyholders. *Id.* at 273–74.  As previously noted, "courts in this Circuit routinely find that declaratory judgments with respect to an insurer's duty to defend and indemnify serve such a useful purpose and provide relief from uncertainty." *Allstate Ins. Co. v. Martinez*, 2012 WL 1379666, at \*10 (D. Conn. Apr. 20, 2012). That is because judicial resolution of the threshold issue of who is liable to defend and indemnify a related suit "is highly useful and beneficial to all interests concerned, including the third party who sues on an injury claim against the insured, previously threatened or not, and wonders if funds will be available to satisfy a judgment if obtained." *Essiam*, 2015 WL 3796243, at \*2.  It gives the parties guidance, before damages have accrued, regarding their future conduct and whether that conduct is lawful or required as well as guides the parties' approaches to litigation "clarifying or settling" for both the insurer and the insured "out of whose pocket . . . any damages and costs of defense will be paid." *Id.* at \*3.  The same is not true here for the reasons discussed.

## CONCLUSION

The motion to dismiss is GRANTED and the case is dismissed without prejudice.

The Clerk of Court is respectfully directed to close Dkt. No. 16.


SO ORDERED.


Dated: June 14, 2023
      New York, New York                             LEWIS J. LIMAN
                                                  United States District Judge